**The below described is SIGNED.**

**Dated: May 08, 2007**

                                     /s/ William J. Thurman
                                     **WILLIAM T. THURMAN**
                                     **U.S. Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| **Eric and Kari Martin,** | Bankruptcy Number 07-20209 |
| Debtors. | Chapter 13 |

**MEMORANDUM DECISION DENYING CONFIRMATION**

The matter before the Court is confirmation of the Debtors' proposed chapter 13 plan. The chapter 13 Trustee objected to confirmation arguing that the Debtors are not entitled to deduct monthly payments owing to a creditor secured by the Debtors' boat in calculating their monthly disposable income. The Court determines that the Debtors are permitted to deduct the payments for the boat but that they have not carried their burden to show their plan is proposed in good faith.

**I.    BACKGROUND**

The Debtors filed for chapter 13 bankruptcy relief on January 19, 2007. They filed bankruptcy schedules showing that, as of the petition date, they owned one vehicle and a 1997 Cobalt 220 boat and boat trailer (the "Ski Boat"). Their schedules indicate that, as of the petition

1

date, they expected to earn total monthly income of $12,051. They also filed a Statement of Current Monthly Income ("Form B22C")[1], indicating that they earned $11,252.58 per month in the six month period prior to filing. In calculating their monthly disposable income on Form B22C, they claimed a deduction of $302 per month representing the monthly payments owing on their Ski Boat to the secured creditor for which they owed $21,350.

The Debtors' bankruptcy schedules indicate that, as of the petition date, they owned one vehicle, a 2004 Nissan Titan truck. Their Form B22C, filed on the same day as their bankruptcy schedules, claims a transportation deduction for two or more vehicles. At the confirmation hearing in this case, the Debtors' counsel represented to the Court that the Debtors purchased a vehicle postpetition for approximately $1,000. The Debtors have neither sought nor obtained permission to use property of the estate to purchase a vehicle, nor have the Debtors amended their bankruptcy schedules to list ownership in a second vehicle.

The Debtors' plan proposes to pay approximately $51,700 in priority unsecured debt and mortgage arrearages of approximately $26,000. The plan also proposes to return $500 to general unsecured creditors. The Debtors' remaining obligations owing for their two mortgages, their 2004 Nissan Titan truck, and their Ski Boat are to be paid directly.

The Trustee objected to confirmation on several grounds. First, he argued that the Debtors failed to provide proof of charitable contributions made within 60 days of filing. Second, he argued that the Debtors are not entitled to deduct secured payments for the Ski Boat on Form B22C because the Ski Boat is not reasonably necessary for their maintenance and

---

[1] The Court refers to Form B22C as the Statement of Current Monthly Income required for determining whether a debtor complies with §§ 1325(b) and 707(b).

2

support. Third, he argued that because the Debtors expect to earn more in the future than they did in the six-month period before filing, they should use the higher amount listed on Schedule I in calculating their monthly disposable income on Form B22C. Fourth, he argued that the Debtors did not propose their chapter 13 plan in good faith.

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(L). Venue is appropriate under 28 U.S.C. § 1408(a).

## III. ANALYSIS

### A. Deductions for Secured Payments on Form B22C Need Not be Reasonable and Necessary

The Trustee argues that a debtor may deduct a payment for secured debt on Form B22C so long as the obligation is reasonably necessary for the debtor's maintenance and support. The Court disagrees.

Section 1325(b) requires a debtor, when faced with an objection to confirmation, to either pay an objecting party's claim in full or to propose a plan which commits the "debtor's projected disposable income[2] to be received in the applicable commitment period[3] beginning on the date that the first payment is due under the plan" to unsecured creditors[4]. The term "disposable income" is defined by § 1325(b)(2) as "current monthly income received by the debtor. . .less

---

[2]See In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006) (interpreting the term, "projected disposable income").

[3]See In re Fuger, 347 B.R. 94 (Bankr. D. Utah 2006) (interpreting the term, "applicable commitment period").

[4]See In re Wilbur, 344 B.R. 650 (Bankr. D. Utah 2006) (interpreting the term, "unsecured creditors").

3

amounts reasonably necessary to be expended" for the debtor's maintenance and support and for charitable contributions. "Amounts reasonably necessary" is defined in accordance with §§ 707(b)(2)(A) and (B), which describe the so-called means-test.

In In re Carlton, the Bankruptcy Court for the Central District of Illinois addressed and rejected the arguments raised by the Trustee.[5] Specifically, the Carlton Court stated:

> The Trustee also makes the argument that the Cadillac Escalade is a luxury vehicle which is not reasonably necessary for these Debtors. That argument is irrelevant in determining whether the Debtors have correctly completed the CMI. . . .The Court does not use its own judgment on reasonableness or necessity but, rather, must determine whether a particular expense is allowed by § 707(b)(2). If an expense is allowed under § 707(b)(2), it meets the new definition of "reasonably necessary" and no subjective review of the expense by the Court is permitted.[6]

The Court finds the reasoning of Carlton persuasive insofar as it discusses the need for secured payments to be reasonably necessary. For purposes of complying with §§ 1325(b) and 707(A) and (B), a debtor is entitled to deduct secured payments on Form B22C so long as those payments are owing.

In this case, the Debtors owed secured payments for the Ski Boat prepetition. Regardless of whether those payments would be considered reasonably necessary for their maintenance and support, they are entitled to a deduction for those payments in calculating the means test on Form B22C.

### B.  The Role of Good Faith

The Court's conclusion that the Debtors were entitled to account for the Ski Boat on Form B22C does not end its inquiry. To confirm a chapter 13 plan, the Court must find under 11

---

[5] — B.R. —, 2007 WL 613848 (Bankr. C.D. Ill. Feb. 28, 2007).

[6] Id. at *7.

U.S.C. § 1325(a)(3)[7] that "the plan has been proposed in good faith and not by any means forbidden by law." The Court's inquiry under this provision is governed by a totality of the circumstances test discussed in Flygare v. Boulden (In re Flygare).[8] Under Flygare, the Court's totality of circumstances analysis should be guided by the following non-exclusive factors:

1. The amount of the proposed payments and the amount of the debtor's surplus;
2. The debtor's employment history, ability to earn and likelihood of future increases in income;
3. The probable or expected duration of the plan;
4. The accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
5. The extent of preferential treatment between classes of creditors;
6. The extent to which secured claims are modified;
7. The type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
8. The existence of special circumstances such as inordinate medical expenses;
9. The frequency with which the debtor has sought Bankruptcy relief;
10. The motivation and sincerity of the debtor in seeking Chapter 13 relief; and
11. The burden which the plan's administration would place upon the trustee.[9]

After reviewing the totality of the circumstances in this case, the Court concludes that the Debtors have failed to carry their burden to show that they propose their chapter 13 plan in good faith.[10]

The Debtors are seeking to retain their Ski Boat, which is subject to a large secured debt. The Debtors' intention to retain their Ski Boat raises particular good faith concerns with the

---

[7]All statutory citations hereinafter are to the Bankruptcy Code, unless stated otherwise.

[8]709 F.2d 1344 (10th Cir. 1983).

[9]Id. at 1347-48.

[10]See In re Alexander, — B.R. —, 2007 WL 738778 at *2 (10th Cir. BAP March 13, 2007) (holding that a debtor bears the burden of persuasion under § 1325(a)).

Court. A similar situation was addressed in In re Cortez.[11] As in this case, the debtor in Cortez proposed to retain and pay for a ski boat and trailer through his chapter 13 plan. The Cortez Court held that the debtor did not propose his plan in good faith. Specifically, the Court stated:

> [C]reditors have full cause to complain if a debtor proposes to service a secured debt against expensive nonexempt assets, particularly where the claim is to receive high priority in payment under the plan. In such a case, the debtor proposes to build up equity in assets which the legislature has not found essential to a fresh start; more crucially, the debtor proposes to correspondingly defer, reduce, or even deny a return to other creditors on their prior claims, by diverting estate resources to nonessential purposes. This impermissibly tips the balance of bankruptcy relief far over to the debtor's side. Such a plan grants a windfall to the debtor, enriching him at creditors' expense to the extent of the equity accumulated post-petition. It does not meet the requirement of § 1325(a)(3).[12]

This reasoning is less persuasive in light of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"). Under the BAPCPA, a debtor is required to file Form B22C, which results in the calculation of the debtor's monthly disposable income for above-median debtors. In most situations an above-median debtor is required to return to unsecured creditors only the amounts specified as monthly disposable income on Form B22C.[13] For that reason, an above-median debtor who proposes to retain a luxury good such as a recreational water ski boat is not necessarily doing so at the expense of unsecured creditors, because the return to general unsecured creditors under the chapter 13 plan is fixed.

But there is yet another reason why good faith requirements under § 1325(a)(3) might preclude a debtor from retaining a luxury item through a chapter 13 plan — to avoid manipulation of the Bankruptcy Code and the bankruptcy system. The bankruptcy system was

---

[11]147 B.R. 498 (Bankr. D. Minn. 1992).

[12]Id. at 505.

[13]See In re Jass, 340 B.R. at 415-16.

6

designed to protect and benefit the "honest but unfortunate debtor."[14]  To that end, the totality of circumstances analysis has been described as a "smell test"[15] intended to screen debtors who do not pass muster.[16]  It seems fundamentally inappropriate that a debtor might file for bankruptcy relief and obtain a discharge of debt while still enjoying a luxury item such as a recreational ski boat and trailer.[17]

In this case, the Debtors properly accounted for the payments owing on their Ski Boat on Form B22C.  The Debtors propose to retain the Ski Boat and pay the secured creditor directly.  This proposal does not pass the code's good faith test.  Simply because an item is an allowable expense on Form B22C does not shelter it from scrutiny under the Court's good faith analysis.  Section 1325(a)(3), which requires the Court to find that a plan is proposed in good faith, is distinct and independent from the requirements of § 1325(b), which requires debtors to comply with Form B22C.  To confirm a plan the Court must find that a debtor complies with both provisions.

In addition, the Court is concerned about the purchase of a vehicle postpetition, although this issue was not raised by the Trustee's objection.  The Debtors admitted at the confirmation hearing that they purchased a vehicle, albeit a used one, postpetition without seeking or

---

[14] Marrama v. Citizens Bank of Massachusetts, — U.S. —, 127 S.Ct. 1105 (2007).

[15] In re Selden, 121 B.R. 59, 63 (D. Or. 1990).

[16] See Marrama, 127 S.Ct. at 1112 n.11.

[17] See Matter of Love, 957 F.2d 1350, 1357 (7th Cir. 1992) ("[O]ne of the primary purposes of the good faith evaluation. . .is to force the bankruptcy court to examine whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of the Chapter. At base, this inquiry often comes down to a question of whether the filing is fundamentally fair.").

obtaining permission of the Court. In doing so, they exercised control over and appropriated the use of property of the estate other than in the ordinary course of business and without leave of the Court. This action was improper under the Bankruptcy Code and in direct contravention of the Debtors' duties under §§ 363(b) and 1303.

The unauthorized use of approximately $1,000 of estate property postpetition casts doubt on the truth of the Debtors' bankruptcy schedules. The Debtors stated in Schedule B that at the time of filing, they had a total of $68.00 in their bank accounts. They stated in Schedule J that their monthly net income was $1325, just enough for them to pay their proposed plan payments. This raises credibility issues and bears on the seriousness with which the Debtors approach this case.

## IV.    CONCLUSION

Confirmation of the Debtors' proposed chapter 13 plan should be DENIED. A separate order accompanies this Memorandum Decision.

Service of the foregoing **MEMORANDUM DECISION DENYING CONFIRMATION** will be effected through the Bankruptcy Noticing Center to each party listed below.

David Berry
Berry & Tripp
5296 S. Commerce Drive, Suite 200
Salt Lake City, UT 84107

Scott Blotter
J. Vincent Cameron, Trustee
47 West 200 South, Suite 600

Eric and Kari Martin
265 West Election Rd.
Draper, UT 84020

U.S. Trustee
Ken Garff Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111